

ENTERED
05/07/2021

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **SYED RIZWAN MOHIUDDIN,** | § | **CASE NO: 15-34752** |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 7** |

## MEMORANDUM OPINION

The issue before the Court is narrow. The Trustee and Southern Title Insurance Company[1] disagree over the scope of services this Court authorized Jackson Walker to perform as special counsel to the Trustee. Southern Title contends that Jackson Walker was not authorized to provide the Trustee with services related to tax and estate administration issues. The Trustee maintains that Jackson Walker was authorized to perform these services, or that Jackson Walker is now entitled to retroactive expansion of the scope of its employment.

At the outset of its employment, Jackson Walker was authorized to perform a portion of the services to which Southern Title now objects. Jackson Walker is retroactively authorized to perform tax-related services. Jackson Walker is not retroactively authorized to perform the liquidation-related services. Jackson Walker is awarded fees and expenses for its authorized services.

## BACKGROUND

Jackson Walker seeks fees and expenses for services rendered to the Trustee between May 2016 and July 2020. (*See* ECF Nos. 374, 375). Initially, Southern Title opposed Jackson Walker's fee applications in their entirety. (*See* ECF No. 384). The parties informally resolved most of their disagreement. (*See* ECF Nos. 404, 435). But Jackson Walker and Southern Title remain

---

[1] Southern Title Insurance Company was a "significant creditor" of Syed Mohiuddin (the Debtor). (ECF No. 384 at 3).

divided over certain fees and expenses related to the resolution of tax and estate administration issues. (*See* ECF No. 393 at 1–4).

Randy Williams, the Trustee of Syed Mohiuddin's bankruptcy estate,[2] requested authority to retain Jackson Walker in early 2016. (*See* ECF No. 25). The Trustee sought to retain Jackson Walker as "Special Counsel" under 11 U.S.C. § 327(e). (ECF No. 25 at 2). Jackson Walker was to "provide the Trustee with legal representation respecting litigation and claims against transferees of property of the estate, entities owing money to the estate and parties aiding and abetting fraudulent transfers." (ECF No. 25 at 2). Jackson Walker was also to "investigate and advise the Trustee with respect to litigation against" the Debtor, as well as against individuals and entities related to the Debtor. (ECF No. 25 at 2–7). At the time the Trustee filed his employment application, Jackson Walker already represented Fidelity National Title Insurance Company—which filed the involuntary petition against the Debtor. (ECF No. 25 at 7). The Trustee asserted that Jackson Walker's representation of Fidelity would enhance Jackson Walker's ability to aid the Trustee's efforts to maximize the value of the estate. (ECF No. 25 at 10).

The Court authorized Jackson Walker's retention in April 2016 (the "Retention Order"). (*See* ECF No. 30).[3] The Retention Order authorized Jackson Walker to: "represent [the] Trustee in this case to perform the necessary professional services, including legal representation respecting litigation and claims against transferees of property of the estate, entities owing money to the estate and parties aiding and abetting fraudulent transfers." (ECF No. 30 at 1). The Trustee was also granted leave to "file such other applications or supplemental applications" as necessary

---

[2] Fidelity National Title Insurance Company filed an Involuntary Chapter 7 Petition against the Debtor in September 2015. (*See* ECF No. 1).

[3] Jackson Walker's fees were to be paid by Fidelity directly. (ECF No. 30 at 1). However, Jackson Walker was still required to file fee applications before Fidelity could pay fees and expenses Jackson Walker incurred as Special Counsel. (ECF No. 30 at 1).

to expand Jackson Walker's representation. (ECF No. 30 at 2). Southern Title did not object to Jackson Walker's retention, nor the terms on which Jackson Walker was retained.

As set forth below, Southern Title fervently argued that Jackson Walker did not properly and ethically manage its simultaneous representation of the Trustee and Fidelity. The Court concludes, without hesitation, that Jackson Walker appropriately and ethically managed its dual representation.

Consistent with the Retention Order's requirements, Jackson Walker filed a first interim fee application and a final fee application in August 2020. (ECF Nos. 374, 375). These applications requested fees and expenses for services rendered to the Trustee between Jackson Walker's retention and the filing of the applications. (ECF Nos. 374 at 1; 375 at 1). Any fees awarded to Jackson Walker based on these fee applications would be used to reimburse Fidelity for fees Fidelity already paid to Jackson Walker. (ECF Nos. 374 at 5; 375 at 5–6).

Along with the fee applications, the Trustee filed a "Supplemental Application to Employ Jackson Walker LLP." (*See* ECF No. 378). Through this application, the Trustee sought a retroactive expansion of Jackson Walker's scope of employment under the Retention Order. (ECF No. 378). Specifically, the Trustee, "in [an] abundance of caution," requested authorization for Jackson Walker "to assist in winding up the Bankruptcy Case" by handling "intricate tax issues and resolving proofs of claim," as well as liquidating estate assets held by the Trustee. (ECF No. 378 at 3, 6).

Southern Title objected to both fee applications, (ECF No. 384), and to the Trustee's request for expansion of the Retention Order, (ECF No. 385). Primarily, Southern Title opposed Jackson Walker's fee applications because, Southern Title alleged, Jackson Walker rendered services not to the Trustee, but instead to Fidelity. (ECF No. 384 at 2). According to Southern

Title, Jackson Walker's dual representation caused Jackson Walker to favor Fidelity's interests over the interests of all creditors, which the Trustee was required to protect. (ECF No. 384 at 5–6). Southern Title also relied on this allegation in opposing the expansion of Jackson Walker's employment. (ECF No. 385 at 1–2). And Southern Title argued that "neither excusable neglect nor exceptional circumstances" warranted the retroactive expansion of Jackson Walker's employment. (ECF No. 393 at 4).

Jackson Walker and Southern Title informally resolved most of their disputes over Jackson Walker's requests for professional fees and expenses. (ECF Nos. 402, 404). However, the parties still disagree over Jackson Walker's entitlement to $45,100 in professional fees, and to reimbursement of $2,891 in fees Jackson Walker incurred preparing its fee application. (ECF No. 404 at 3–4; *see also* ECF No. 432 at 7:12–19, 8:19–20). To narrow the dispute, Jackson Walker and Southern Title stipulated that:

> If the Court determines *the work performed in the Final Fee Application is within the scope of the Retention Order or the Court grants the relief sought in the Supplemental Application*, then JW will be allowed both compensation . . . for work detailed in the Final Fee Application and reimbursement . . . for the cost of preparing the Final Fee Application. If the Court rules in favor of Southern on the issue of whether the scope of work in the Final Fee Application is outside the scope of the Retention Order and the Supplemental Application is disapproved, then the amount sought in the Final Fee Application would be disallowed in accordance with the Court's ruling.

(ECF No. 404 at 3–4 (emphasis added)).

This Memorandum Opinion resolves the parties' narrow dispute.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. The compensation of estate professionals is a core matter under 28 U.S.C. § 157(b)(2)(A), (B). This

case was referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Jackson Walker seeks confirmation that certain services provided to the Trustee were within the scope of services authorized by this Court's Retention Order. If these services were not authorized by the Retention Order, Jackson Walker, through the Trustee, seeks retroactive expansion of the Retention Order to encompass these services. Southern Title disputes that these services were authorized by the Retention Order and argues that Jackson Walker is not now entitled to authorization.

The Trustee, with the Court's approval, retained Jackson Walker as an estate professional under § 327(e). As an estate professional, Jackson Walker is entitled to compensation under §§ 330(a) and 331. However, §§ 330(a) and 331 only authorize compensation for employment approved under §§ 327 or 328. 11 U.S.C. §§ 330(a), 331 (2020); *In re American Hous. Found.*, 09-20232-RLJ-11, 2014 WL 2504510, at *5 (Bankr. N.D. Tex. June 3, 2014). The order authorizing an estate professional's employment establishes the scope of work the professional may perform. *In re Cuisine Mag., Inc.*, 61 B.R. 210, 216 (Bankr. S.D.N.Y. 1986) (citing *In re Futuronics Corp.*, 655 F.2d 463, 470–71 (2d Cir. 1981)). Estate professionals are not entitled to compensation for work exceeding the scope of the order authorizing the professional's employment. *Id.* The Court retains the power to determine the scope of its Retention Order. *In re Baker*, 593 Fed. Appx. 416, 417 (5th Cir. 2015) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

### A. The Scope of Work Authorized by the Retention Order

The Retention Order broadly authorized Jackson Walker to provide "necessary professional services, including legal representation respecting litigation and claims against transferees of property of the estate, entities owing money to the estate and parties aiding and abetting fraudulent transfers." (ECF No. 30 at 1). Southern Title complains that Jackson Walker did more and, as a result, should not be compensated. The substantive services Jackson Walker rendered, which Southern Title argues were unauthorized, fall into three categories: (1) services related to the Trustee's settlement of turnover and avoidance litigation, (*see, e.g.,* ECF No. 375 at 16); (2) tax-related services, (*see, e.g.,* ECF No. 375 at 24); and (3) services related to the liquidation of certain estate assets, (*see, e.g.,* ECF No. 375 at 42).[4]

The Retention Order authorized Jackson Walker to perform settlement-related services. Jackson Walker's settlement efforts resolved the Trustee's avoidance and turnover claims against the Debtor and other related entities. (ECF No. 350). The Retention Order expressly authorized Jackson Walker to litigate and resolve such claims. Nothing about Jackson Walker's settlement efforts exceeded the Retention Order.

Jackson Walker's tax-related and liquidation services were not authorized by the Retention Order. Because Jackson Walker was retained as "Special Counsel" under § 327(e), the scope of its employment was necessarily limited to "a specified special purpose." 11 U.S.C. § 327(e); *see also* 3 COLLIER ON BANKRUPTCY ¶ 327.01 (16th ed. 2021) ("The purpose for which an attorney is to be employed must be specified and may not encompass bankruptcy services typically provided by the trustee's general bankruptcy counsel concerning the administration of the bankruptcy

---

[4] A fourth category encompasses the fees and expenses Jackson Walker incurred in preparing its fee applications. (*See, e.g.,* 375 at 16). The parties stipulated that these fees and expenses would be allowed should the Court grant Jackson Walker's supplemental employment application. (ECF No. 404 at 3–4). Because Jackson Walker's supplemental employment application is granted in part, these fees will be allowed, *pro rata*.

case."). That purpose was to provide legal services related to "litigation and claims against transferees of property of the estate, entities owing money to the estate and parties aiding and abetting fraudulent transfers." (ECF No. 30 at 1).

The tax-related services provided by Jackson Walker do not fall under the auspices of the Retention Order. While Jackson Walker's settlement efforts may have created or exacerbated the tax issues facing the Trustee, there is no fair reading of the Retention Order that would authorize these tax services. The Trustee was free to seek authorization to employ professionals to assist with the Trustee's duty to file tax returns. *See* 11 U.S.C. § 327(a) ("[T]he trustee, with the court's approval, may employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title."); *see also* § 327(e) ("The trustee, with the court's approval, may employ, for a specified special purpose . . . an attorney . . . ."). Although the Trustee could have sought advance approval to retain Jackson Walker (or another firm) to render these services, he did not.

Jackson Walker's efforts to liquidate estate assets were also outside the scope of the Retention Order. Section 704(a)(1) expressly imposes the duty of liquidating estate assets on the Trustee. 11 U.S.C. § 704(a)(1). If the Trustee needed to retain an attorney to assist with the liquidation process, § 327 required the Trustee to obtain the Court's authorization to employ that attorney. *See* § 327(a), (e). The Court did not authorize Jackson Walker's assistance in liquidating the estate's assets. While Jackson Walker's liquidation services brought value to the estate, these services nonetheless exceeded the scope of the Retention Order. *See Cuisine Magazine*, 61 B.R. at 216 (citing *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203, 205 (3d Cir. 1969)) ("The fact that such unauthorized services may have been beneficial to the estate is immaterial.").

The Retention Order only authorized Jackson Walker's settlement-related services.

### B. Retroactive Expansion of the Retention Order

Jackson Walker, through the Trustee, requests an order retroactively expanding its role as Special Counsel to include its services not covered by the original Retention Order. Bankruptcy courts maintain the discretion to retroactively authorize the employment of estate professionals. *In re Triangle Chems., Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983). The Bankruptcy Court for the Southern District of Texas authorizes retroactively effective employment applications by Local Rule. *See* BANKR. S.D. TEX. LOC. R. 2014-1(b). These applications for must include:

- (A) An explanation of why the application was not filed earlier;

- (B) An explanation why the order authorizing employment is required *nunc pro tunc*;[5]

- (C) An explanation, to the best of the applicant's knowledge, how approval of the application may prejudice any parties-in-interest.

BANKR. S.D. TEX. LOC. R. 2014-1(b)(2)(A)–(C). Aside from the Local Rule's requirements, an applicant must also demonstrate its failure to timely seek employment authorization resulted from "excusable neglect." *In re 1002 Gemini Interests LLC*, 11-38815, 2015 WL 913542, at *15 (Bankr. S.D. Tex. Feb. 27, 2015); *see also In re Arkansas Co., Inc.*, 798 F.2d 645, 650 (3d Cir. 1986) ("[In retroactively authorizing employment,] the bankruptcy court must consider whether the particular circumstances in the case adequately excuse the failure to have sought prior approval."). The Trustee bears the burden of establishing that the scope of Jackson Walker's role should be retroactively expanded. *In re Decloutte*, 12-35092, 2018 WL 3078153, at *14 (Bankr. S.D. Tex. June 20, 2018) (citing *In re Lyons*, 439 B.R. 401, 405 (Bankr. S.D. Tex. 2010)).

---

[5] Courts cannot use *"nunc pro tunc"* orders to engage in revisionist history. *Roman Cath. Archdiocese of San Juan, P. R. v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020). Orders that retroactively authorize employment do not alter the historic landscape.

The Trustee provided explanations for his failure to timely seek authorization for Jackson Walker to render services not covered by the Retention Order. (ECF No. 378 at 6). Primarily, the Trustee contends that he *believed* the broad language of the Retention Order authorized the services rendered by Jackson Walker to which Southern Title now objects. (ECF No. 405 at 4). This belief was based on:

> [T]he issues surrounding liquidation of assets and calculating the tax basis [being] directly linked to the nature of assets belonging to the estate. These assets are not clearly in the Debtor's name and the surrounding money trail is convoluted. In order to complete tax returns (where the Debtor has not filed any for several years) and sell assets to prospective purchasers, [Jackson Walker's] knowledge that led to the Adversary was necessary for the Additional Work.

(ECF No. 405 at 4). Essentially, the Trustee believed that because the tax and liquidation issues were closely related to the issues Jackson Walker was authorized to address, Jackson Walker was also authorized to handle the tax and liquidation issues. Based on this belief, and because Jackson Walker's efforts resulted in a "significant benefit to the estate," the Trustee argues that expansion is warranted. (ECF No. 405 at 4).[6]

The Trustee's delay in requesting an expansion of Jackson Walker's duties is problematic. However, retroactive expansion of Jackson Walker's role to include its tax-related services is warranted. But there is insufficient justification for a retroactive expansion of Jackson Walker's role to render liquidation services.

---

[6] The Trustee also asserts that retroactive expansion of Jackson Walker's role will not prejudice any parties. (ECF No. 405 at 5). Southern Title does not identify any prejudice it will suffer should Jackson Walker's role be expanded retroactively.

The Trustee's explanation is accepted as valid, though Southern Title may disagree.[7] The parties' dispute instead centers on whether the need for retroactive expansion arose from "excusable neglect."

The Trustee's failure to seek Court authorization for Jackson Walker's tax-related services was attributable to "excusable neglect." *Lyons*, 439 B.R. at 407 (citing *Triangle Chemicals*, 697 F.2d at 1290) ("[T]he 'oversight' referenced in *Triangle Chemicals* includes situations in which an attorney or other responsible party neglects to timely file an application to employ due to a misunderstanding . . . ."). The Trustee's misunderstanding in assuming the Retention Order authorized Jackson Walker's tax-related services arose from: (1) the belief that the tax issues were inextricably bound to Jackson Walker's recovery from the turnover and avoidance claims; and (2) the fact that tax issues were not addressed in either the Retention Order or the Order authorizing the Trustee to retain general counsel. That is, the Trustee allowed Jackson Walker to perform the unauthorized tax services because these services were not addressed in either retention order but were closely related to services Jackson Walker was explicitly authorized to perform. The Trustee's misunderstanding is excusable. *See Triangle Chemicals*, 697 F.2d at 1289 ("[T]hrough [an] oversight the attorney has neglected to obtain such prior approval . . . the bankruptcy court retains equitable power . . . under exceptional circumstances, to grant such approval nunc pro tunc . . . .").

---

[7] Southern Title does characterize the "Trustee's belief" that "Jackson Walker's retention as special counsel gave Jackson Walker *carte blanche* authority to perform any services on his behalf whatsoever" as "highly suspicious." (ECF No. 393 at 3). Yet this "highly suspicious" belief is not the Trustee's. The Trustee did express that he believed the objectionable work fell within the "necessary professional services detailed in the Retention Order"—a broad statement. (ECF No. 378 at 6). But the Trustee explains that he asked Jackson Walker to provide these services because of its familiarity with the adversary proceeding that necessitated the services. (ECF No. 378 at 6). "*Carte blanche* authority" hardly describes the basis for the Trustee's belief.

It was not "excusable neglect" for the Trustee to allow Jackson Walker to assist in liquidating the estate's assets. The Trustee retained general counsel to liquidate the estate's assets. (ECF No. 29 at 2). In authorizing the Trustee's retention of general counsel, the Court made clear that general counsel was "to assist in the liquidation of any assets or property of the estate *other than the claims that are pursued by special counsel* and to reduce any asset to monetary value whether by sale or otherwise." (ECF No. 29 at 2 (emphasis added)). Jackson Walker did more than pursue the estate's claims. After settling the estate's claims and recovering settlement proceeds, some of which were non-monetary assets, Jackson Walker aided the Trustee in liquidating the non-monetary assets. (*See* ECF No. 368 at 1–3; *see, e.g.*, ECF No. 375 at 42). Jackson Walker carried out these liquidation efforts despite general counsel's charge to "reduce any asset to monetary value whether by sale or otherwise." (ECF No. 29 at 2). It was incumbent on the Trustee and Jackson Walker to adhere to this Court's retention orders. *See Am. Hous. Found.*, 2014 WL 2504510, at *5 ("The Bankruptcy Code does not authorize the payment of a professional whose employment has not been properly authorized."). Absent a further order delegating liquidation responsibilities to Jackson Walker, the Trustee's acceptance of liquidation services from Jackson Walker contravened the requirements of §§ 327 and 330(a). *See Lyons*, 439 B.R. at 407.

Based on the Trustee's explanation and the complexity of the issues resulting from the settlement, the Trustee's failure to timely seek authorization for Jackson Walker to render tax-related services was excusable. The order authorizing the Trustee's retention of general counsel precludes retroactive authorization of Jackson Walker's liquidations services.

The Mohiuddin bankruptcy was complicated and convoluted. The Trustee, with Jackson Walker's counsel, achieved an extraordinary result for the Debtor's creditors. Equity favors

compensating Jackson Walker for its efforts. However, adherence to the Code's procedural edicts is a prerequisite to compensation, except in exceptional circumstances.

## CONCLUSION

Jackson Walker's Supplement Application is granted in part and denied in part. Jackson Walker is awarded professional fees and expenses for its authorized services and *pro rata* fees and expenses for the preparation of its fee application. Not later than June 1, 2021, Jackson Walker must submit a breakdown of fees, segregated by category. After the submission is reviewed, a separate Order will be issued consistent with this Memorandum Opinion.

SIGNED 05/07/2021

Marvin Isgur
United States Bankruptcy Judge